ORTIZ & ORTIZ, L.L.P.
32-72 Steinway Street, Ste. 402
Astoria, New York  11103
Norma E. Ortiz, Esq.
Martha de Jesus, Esq.
Tel. (718) 522-1117
Fax. (718) 596-1302
email@ortizandortiz.com
*Proposed Counsel to the Debtor*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re

L.R.B. NURSES REGISTRY, INC.,                          Case No.  15-45532-cec

                              Debtor.                  Chapter 11
--------------------------------------------------------X

**DEBTOR'S APPLICATION FOR AN ORDER
DIRECTING ABRAHAM GREENHUT TO PURCHASE
PROPERTY PURSUANT TO HIS OFFER OF $2,300,000 OF APRIL 13, 2016**

TO:    THE HONORABLE CARLA E. CRAIG,
       UNITED STATES BANKRUPTCY JUDGE:

       L.R.B. Nurses Registry, Inc., by and through its proposed attorneys Ortiz & Ortiz, L.L.P.,

hereby moves for an order directing Abraham Greenhut (the "Successful Bidder") to purchase

the real property located at 4212 Church Avenue, Brooklyn, New York 11203 (the "Property") at

his offer of April 13, 2016, of $2,300,000 (the "Application").  In support of the Application, the

Debtor asserts as follows:

## BACKGROUND

1.    The Debtor filed its chapter 11 bankruptcy petition on December 9, 2015.

2.    The Debtor's sole asset is the Property.  The Property has one tenant at this time.

3.    The Debtor's shares have been the subject of a disputed probate action in

Surrogate's Court in connection with the Estate of Leyland Benn (the "Benn Estate").  Mr. Benn

was the former shareholder of the Debtor.  Upon his passing, the Debtor's shares became

property of his estate.  The dispute before the Surrogates Court, in Queens County, primarily

arose between Mr. Benn's children and his second wife, Ms. Rosemund Norton.  At the present

time, Mr. Benn's daughter, Marcelle Benn, serves as the administrator of Mr. Benn's estate and

president of the Debtor.

4.      The Debtor's bankruptcy case was precipitated by the scheduled sale of the

Property by a judgment creditor.  The Debtor is seeking to sell the Property to repay all creditors

in full.

5.      On February 9, 2016, the Debtor filed a motion to approve bidding procedures

(the "Bidding Procedures"), scheduling an auction, and approving the sale of the Property.

6.      On March 25, 2016, the Court entered an order approving the Bidding Procedures

and scheduling the auction for April 14, 2016.

7.      Prior to the auction, Walter Drobenko, Esq., counsel to the Benn Estate, actively

marketed the Property and negotiated with interested buyers.  See Declaration of Walter

Drobenko attached as Exhibit A.

8.      On April 13, 2016, the day before the scheduled auction, Mr. Drobenko received

a written offer from the Successful Bidder's attorney, Aaron L. Goodman, Esq., of Altman

Schochet, LLP (the "First Offer").  The offer states that the Successful Bidder "makes a bid offer

in the amount $2,300,000.00 [sic], such offer being irrevocable until (a) the conclusion of the

Auction to the extent the bidder is not the Successful Bidder or Backup Bidder, or (b) the

closing." See copy of Successful Bidder's offer of April 13, 2016, attached as Exhibit B.

9.      As a result of the offer received from the Successful Bidder, Mr. Drobenko

2

contacted every other interested bidder and informed them that the starting bid would be $2,300,000. As a result of this starting bid, many of the interested parties informed Mr. Drobenko that they would not attend the auction. One party had expressed interest in the Property at $2,200,000, but upon learning that the starting price was $2,300,000, that party did not appear at the auction. See email from Albert Aranbaev attached as Exhibit C.

10.    On April 14, 2016, two bidders attended the auction.

11.    While the parties were waiting to begin the auction, the bidders conversed with each other about the starting bid.

12.    When the Debtor began the auction, the Successful Bidder submitted a second offer in the amount of $1,900,000 (the "Second Offer"). This offer was also in the form of a letter from Mr. Goodman. The second bidder at the auction made an offer of $1,450,000, and became the Backup Bidder. A copy of the Second Offer is attached as Exhibit D.

13.    The Debtor informed the Successful Bidder that it rejected the Second Offer and would seek to enforce the First Offer as the purchase price for the Property. At the conclusion of the auction, the Successful Bidder executed the Debtor's terms and conditions of sale (the "Terms and Conditions of Sale"). See the Terms and Conditions of Sale attached as Exhibit E.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction to consider the Application and the relief requested herein pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

15.    By this Application, the Debtor seeks an order directing the Successful Bidder to close on the purchase of the Property for the amount of his First Offer of $2,300,000, or to permit the Debtor to retain the contract deposit and conduct a new auction.

### I. The Successful Bidder Must Close On The Property Pursuant to the First Offer

16.    The Bidding Procedures, attached hereto as Exhibit F, provide in relevant part as follows:

> All bids must include the following items (the "Required Bid Documents"):
>
> (a) a letter stating that the bidder's offer is irrevocable until (a) the conclusion of the Auction to the extent the bidder is not the Successful Bidder or Backup Bidder, or (b) the closing of the Sale Transaction (the "Closing") to the extent the bidder is the Successful Bidder or Backup Bidder;
>
> (b) a cash deposit (via wire transfer or certified funds) to ORTIZ AND ORTIZ LLP, as Attorneys (the "Deposit Agent") the total sum equal to ten percent (10%) of such bidder's bid (a "Good Faith Deposit"); and
>
> (c) proof of financial ability to consummate the purchase of the Property.

17.    On April 13, 2016, the Successful Bidder provided the First Offer with proof of funds from Signature Bank and the letter stated that the offer was irrevocable until closing.

18.    Under New York law, an "irrevocable offer cannot be unilaterally withdrawn, revoked or rescinded." Hermanowski v. Acton Corp., 580 F.Supp. 140 (1983).  Moreover, an offer becomes irrevocable if the offer states that it is irrevocable and provides a term of duration of the offer in writing.  See S.O. Textiles Co., Inc. v. A & E Products Group, 18 F.Supp.2d 232 (1998).  Here, the First Offer was in writing and set a duration for how long the offer would

4

remain revocable.  As a result, the First Offer was irrevocable and the Successful Bidder did not

have the right to revoke it in favor of a lower offer.

## II.  Alternatively, Debtor Should be Allowed to Retain the Contract Deposit of the Successful Bidder and Hold a Second Auction of the Property.

19.    In the event that Successful Bidder refuses to honor his First Offer, the Terms and

Conditions of Sale executed by the Successful Bidder provide a remedy to the Debotr.  In

relevant part, the Terms and Conditions state as follows:

> *the failure of the Successful Purchaser* [. . .] to close for any reason whatsoever
> (except as otherwise provided herein) including its failure to pay the balance of
> the Purchase Price on the Closing date, will result in an *immediate forfeiture of
> the Deposit* and the termination of the Successful Purchaser's [. . .] right to
> acquire the Property under these Terms and Conditions of Sale and the
> Memorandum of Sale. (Emphasis added).

Terms and Conditions of Sale, Par. 9.

20.    Therefore, if the Successful Bidder is unable, or unwilling, to close pursuant to

his First Offer, the Debtor should be directed to retain the good faith deposit from the Successful

Buyer as its liquidated damages for the Successful Bidder's breach of the First Offer.

21.    Accordingly, the Debtor should be permitted to hold a second auction to sell the

Property and fully administer its bankruptcy estate.

## NOTICE

22.    The Debtor provided copies of the Application, and supporting exhibits, to (i) the

Office of the United States Trustee and (ii) counsel to judgment creditor, (iii) counsel for

Successful Bidder, and (iv) all parties having filed a notice of appearance and request for service

of papers in the Debtor's case by electronic mail and overnight mail.

5

23.     Under the facts and circumstances presented, the Debtor submits that the proposed notice procedures would provide parties in interest with ample notice and opportunity to be heard as to the relief requested.

24.     No previous application for relief requested herein has been made to this or any other court.

## **CONCLUSION**

25.     Based upon the foregoing, it is respectfully submitted that the Successful Bidder's First Offer was irrevocable and that he is bound to perform under its terms.

**WHEREFORE**, the Debtor respectfully requests that the Court grant the relief requested herein and grant such other and further relief as is just.

Dated: May 24, 2016
        Astoria, New York

*/s/Norma E. Ortiz*
Norma E. Ortiz, Esq.
Martha de Jesus, Esq.
Ortiz & Ortiz, L.L.P.
32-72 Steinway Street, Ste. 402
Astoria, NY  11103
Tel. (718) 522-1117
*Proposed Counsel to the Debtor*

# Exhibit A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re

L.R.B. NURSES REGISTRY, INC.,                              Case No.  15-45532-cec

                                   Debtor.                 Chapter 11
--------------------------------------------------------X

## <u>DECLARATION OF WALTER DROBENKO</u>

Walter Drobenko, being duly sworn, declares as follows:

1.      I am an attorney at law admitted to practice in the State of New York and a

member of the firm Drobenko & Associates, P.C., located at 25-84 Steinway Street, Astoria,

New York 11103.

2.      I am the attorney of record for the Estate of Leyland Benn, the sole shareholder of

L.R.B. Nurses Registry Inc. (the "Debtor").

3.      I have actively marketed the real property located at 4212 Church Avenue,

Brooklyn, New York 11203 (the "Property") since 2015.

4.      In December 2015, I received an offer to purchase the Property for $2,150,000

from S & A Realty Holdings LLC and in January 2016 an offer for $2,155,000.00 from Green

Rock Capital LLC.

5.      I continued to market the Property and engaged in negotiations with various

interested parties.  I provided all interested parties with a copy of the bidding procedures and the

terms of sale to be used at the auction of the Property.

6.      In early April 2016, I engaged in negotiations with representatives of Abraham

Greenhut.  On April 13, 2016, I received a written irrevocable offer from Mr. Greenhut's

attorneys in the amount of $2,300,000.  A copy of the April 13, 2016, offer is attached hereto as

Exhibit B.

7.      Upon receiving this offer, I informed all other interested parties that the starting price of the auction would be $2,300,000.

8.      As a result of this announcement, I have confirmation that at least one interested person did not appear at the auction because of that starting price.  Annexed as Exhibit C is a copy of electronic mail I received from Albert Aranbaev, a broker for a party who was willing to bid $2,200,000 for the Property.  Mr. Aranbaev represented to me in the email dated April 15, 2016, that his "client is ready willing and able to move forward at 2.2 MM under the same terms that we presented earlier".

9.      On April 14, 2016, I attended the auction for the Property.

10.     When I arrived, I reiterated that the opening bid was going to be $2,300,000 as per Mr. Goodman's irrevocable offer dated April 13, 2016.  However, Mr. Greenhut, tendered a second offer with a reduced bid of $1,900,000.00.  I advised Mr. Greenhut that he cannot attempt to reduce his bid because his attorney made an irrevocable offer on April 13, 2016.  Mr. Greenhut, when questioned, conceded to all present that the firm of Altman Schochet LLP by Aaron L. Goodman, Esq. represented him and that Mr. Goodman was authorized to make the irrevocable offer that was contained in the April 13, 2016 addressed to Ortiz & Ortiz and emailed to me at Wdrobenko@cs.com.

11.     I respectfully request that Mr. Greenhut be compelled to close the transaction for a sale price of $2,300,000 plus any and all additional costs as set forth in the bidding procedures and guidelines.  In addition, I respectfully request that the Court award attorneys fees in the amount of $10,000.00.

I declare that the foregoing is true under penalties of perjury.


Dated: May 24, 2016
       Astoria, New York

                                             */s/Walter Drobenko*
                                             Walter Drobenko, Esq.
                                             Drobenko & Associates, P.C.,
                                             25-84 Steinway Street,
                                             Astoria, New York 11103.

# Exhibit B

# ALTMAN SCHOCHET, LLP

ATTORNEYS AT LAW

April 13, 2016

**VIA OVERNIGHT MAIL AND EMAIL: wdrobenko@cs.com**
Ortiz & Ortiz LLP
32-72 Steinway Street, Suite 402
Astoria, New York 11103

RE:    In re LRB NURSES REGISTRY, INC., Case No. 15-45532
4212 Church Ave, Brooklyn, NY 11203 ("the Premises")

Dear Sirs:

We represent Abraham Greenhut (the "Bidder") with regard to his bona fide interest to purchase the Premises. The Bidder makes a bid offer in the amount $2,300,000.00, such offer being irrevocable until (a) the conclusion of the Auction to the extent the bidder is not the Successful Bidder or Backup Bidder, or (b) the closing.

Please see enclosed the following documents which will be delivered at the auction scheduled April 14, 2016:

1. copy of the cash deposit (in certified funds) in the amount of $300,000.00 made to the order of Ortiz & Ortiz LLP, as Attorneys; and

2. proof of financial ability to consummate the purchase of the Property.

Should you have any questions or concerns, please do not hesitate to contact the undersigned.

Thank you.

Sincerely,

Aaron L. Goodman, Esq.

Cc:    **wdrobenko@cs.com**

CC:    Walter Drobenko, Esq.
Drobenko & Associates, P.C.
25-84 Steinway Street
Astoria, New York 11103



26 Court Street Brooklyn New York 11242 ▪ phone 718 290 1860 ▪ fax 718 290 1861 ▪ www.signatureny.com

April 12, 2016

Re: Abraham Grunhut

Att: Ortiz and Ortiz LLP

Please be advised that the above mentioned client had an aggregate available balance in personal and business accounts of over $3,500,000 on the close of business day April 11th, 2016.

If you have any questions, please contact me at 718-290-1865.

Sincerely,

Roman Rozenberg, VP

# Exhibit C

## Norma E. Ortiz

| | |
|---|---|
| **From:** | Walter Drobenko <wdrobenko@cs.com> |
| **Sent:** | Friday, April 15, 2016 10:42 AM |
| **To:** | norma@ortizandortiz.com; email@ortizandortiz.com |
| **Subject:** | Fwd: 4212 CHURCH AVENUE |

Norma, here is the email confirmation from the broker.

_____
WALTER DROBENKO, ESQ.
DROBENKO & ASSOCIATES, P.C.
25-84 STEINWAY STREET
ASTORIA, NEW YORK 11103
Tel.   (718) 721-2000
Fax. (718) 721-8812

-----Original Message-----
From: Albert Aranbaev <albert@fcmre.com>
To: 'Walter Drobenko' <wdrobenko@cs.com>
Sent: Fri, Apr 15, 2016 10:36 am
Subject: RE: 4212 CHURCH AVENUE

Walter,

Just to let you know that my client decided not to attend the Auction because of the fact that the starting bid was set 2.3MM.  My client's offer, which was his best and final was 2.2MM and he did not want to walk into an auction knowing that the starting bid is much higher than his.

If the property is still available, my client is ready willing and able to move forward at 2.2MM under the same terms we presented earlier.

Thank You,

**Albert Aranbaev** | Asset Management & Brokerage
**FCMRE** | **First Class Management**
M: 718.551.7746 | P: 347.829.7768 | F: 212.918.9037
albert@fcmre.com | www.fcmre.com



This email may contain information that is confidential. The contents of this email are intended only for the recipient(s) listed above. If you are not the intended recipient you are directed not to read, disclose, copy, distribute or otherwise use.  If you have received this email in error, please notify the sender immediately and delete the transmission. Delivery of this message is not intended to waive any applicable privileges.

**From:** Walter Drobenko [mailto:wdrobenko@cs.com]
**Sent:** Thursday, April 14, 2016 5:06 PM
**To:** albert@fcmre.com
**Subject:** 4212 CHURCH AVENUE

What happened to your guy?

_____
WALTER DROBENKO, ESQ.
DROBENKO & ASSOCIATES, P.C.
25-84 STEINWAY STREET
ASTORIA, NEW YORK 11103
Tel.   (718) 721-2000
Fax. (718) 721-8812

# Exhibit D

# ALTMAN SCHOCHET, LLP

ATTORNEYS AT LAW

April 14, 2016

**VIA OVERNIGHT MAIL AND EMAIL: wdrobenko@cs.com**
Ortiz & Ortiz LLP
32-72 Steinway Street, Suite 402
Astoria, New York 11103

RE:    In re LRB NURSES REGISTRY, INC., Case No. 15-45532
4212 Church Ave, Brooklyn, NY 11203 ("the Premises")

Dear Sirs:

We represent Abraham Greenhut (the "Bidder") with regard to his bona fide interest to purchase the Premises. The Bidder makes a bid offer in the amount $1,900,000.00, such offer being irrevocable until (a) the conclusion of the Auction to the extent the bidder is not the Successful Bidder or Backup Bidder, or (b) the closing.

Please see enclosed the following documents which will be delivered at the auction scheduled April 14, 2016:

1. copy of the cash deposit (in certified funds) in the amount of $300,000.00 made to the order of Ortiz & Ortiz LLP, as Attorneys; and

2. proof of financial ability to consummate the purchase of the Property.

Should you have any questions or concerns, please do not hesitate to contact the undersigned.

Thank you.

Sincerely,

Aaron L. Goodman, Esq.



26 Court Street Brooklyn New York 11242 ▪ phone 718 290 1860 ▪ fax 718 290 1861 ▪ www.signatureny.com

April 12, 2016

Re: Abraham Grunhut

Att: Ortiz and Ortiz LLP

Please be advised that the above mentioned client had an aggregate available balance in personal and business accounts of over $3,500,000 on the close of business day April 11th, 2016.

If you have any questions, please contact me at 718-290-1865.

Sincerely,

Roman Rozenberg, VP

# Exhibit E

# TERMS AND CONDITIONS OF SALE

**PURSUANT TO AN ORDER OF THE HONORABLE CARLA E. CRAIG, DATED MARCH 25, 2016, THE PROPERTY OF THE DEBTOR, LOCATED AT 4212 CHURCH AVENUE, BROOKLYN, NEW YORK 11203 IS TO BE SOLD AT PUBLIC AUCTION.**

1.     On December 9, 2015, L.R.B. Nurses Registry, Inc., the debtor and debtor-in-possession (the "Debtor"), filed a voluntary petition for relief under chapter 11 of Title 11, United States Code (the Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Court"), commencing case number 15-45532-CEC. To date, no committee, trustee, or examiner has been appointed, and the Debtor continues to operate and manage its business and property as a debtor-in-possession under Bankruptcy Code §§ 1107(a) and 1108.

2.     These Terms and Conditions of Sale are promulgated in connection with the court authorized Public Auction Sale (the "Auction") of the Debtor's real property located at 4212 Church Avenue, Brooklyn, New York 11203 a/k/a Borough: Brooklyn; Block: 4896; Lot: 7 (the "Property"). The Auction shall be conducted by Ortiz & Ortiz, LLP ("Ortiz"), with offices at 32-72 Steinway Street, Suite 402, Astoria, NY 11103.

3.     The Auction will be held on April 14, 2016 at 11:00 am (the "Sale Date") at 32-72 Steinway Street, Suite 402, Astoria, NY 11103.

4.     The Successful Purchaser (as hereinafter defined) of the Property, will, at the time and place of the conclusion of the Auction, sign a memorandum of sale (the "Memorandum of Sale") in accordance with these Terms and Conditions of Sale.

5.     In order to be permitted to bid on the Property, prior to the commencement of the Auction, each prospective bidder ("Bidder") must deliver to Ortiz a certified check or bank check made payable to "ORTIZ & ORTIZ L.L.P, as Attorneys" in the amount of Three Hundred Thousand Dollars ($300,000.00) (the "Qualifying Deposit"), which amount shall serve as a partial good faith deposit against payment of the purchase price by such competing Bidder as Ortiz determines to have made the highest or best bid for the Property (the "Successful Purchaser"). Within 48 hours after conclusion of the Auction, the Successful Purchaser shall deliver to Ortiz, by certified check or bank check made payable to "ORTIZ & ORTIZ L.L.P, as Attorneys" or by wire in immediately available federal funds, an amount equal to 10% of the high bid realized at Auction minus the Qualifying Deposit. Failure of the Successful Purchaser to tender the 10% Deposit of the high bid at Auction within 48 hours after conclusion of the Auction shall result in an immediate default under the terms of these Terms and Conditions of Sale and the Memorandum of Sale and shall result in the forfeiture of all earnest monies paid. The Successful Purchaser and the competing Bidder who Ortiz determines to have made the second highest or best bid for the Property (the "Second Highest Bidder") must execute, and thereby agree to be bound by these Terms and Conditions of Sale and the Memorandum of Sale. **At the conclusion of the Auction, Ortiz will return the Qualifying Deposits to all Bidders, except for the Successful Purchaser and the Second Highest Bidder. The Second Highest Bidder's Qualifying Deposit shall be returned within two (2) business days following approval of the Auction by the Bankruptcy Court ("Court Approval Date").**

6.      The Successful Purchaser must pay the balance of the Purchase Price for the Property to Ortiz by certified check or bank check or by wire in immediately available federal funds.  The Successful Purchaser must close title to the Property at a date that is no more than Forty Five (45) days after the Court Approval Date, **TIME BEING OF THE ESSENCE as to the Successful Purchaser,** although such date may be extended solely by the Attorney for the Debtor.  Notwithstanding the foregoing, Debtor shall grant the Successful Bidder a single thirty (30) day extension, at the request of the Successful Bidder, provided Successful Bidder posts an additional, non-refundable deposit equal to ten (10%) percent of the Purchase Price prior to the forty-fifth (45th) day following court approval (the "Additional Deposit").  The Additional Deposit shall be made by certified check or bank check made payable to "ORTIZ & ORTIZ L.L.P., as Attorneys" or by wire in immediately available federal funds and, together with the original Deposit, shall be deemed the "Deposit".  If Successful Bidder elects for an extension, the Closing shall take place on or before the ninetieth (90th) day following court approval, **TIME BEING OF THE ESSENCE as to the Successful Bidder.**  If Successful Purchaser elects to exercise the Extension, Successful Purchaser shall be responsible for all real estate taxes incurred from the 45th day after the Court Approval Date through.

7.      If the Successful Purchaser fails to post the total required ten (10%) percent Deposit within 48 hours following the Public Sale ("Successful Purchaser's Default"), the Debtor, in its sole and absolute discretion, may, within three (3) business days of Successful Purchaser's Default, deem the Second Highest Bidder to hold all benefits and obligations under the Terms and Conditions of Sale and Memorandum of Sale, as the new Successful Purchaser (the "New Successful Purchaser").  The New Successful Purchaser shall not receive credit for any Deposit forfeited by the initial Successful Purchaser.  The New Successful Purchaser must close title to the Property no later than forty five (45) days following receipt of written notice to the New Successful Purchaser of Successful Purchaser's Default (the "New Successful Purchaser's Closing"), **TIME BEING OF THE ESSENCE as to the New Successful Purchaser,** although such date may be extended solely by the Debtor.  Notwithstanding the foregoing, the Debtor shall grant the New Successful Purchaser a single forty five (45) day extension (the "New Successful Purchaser's Extension"), at the request of the New Successful Purchaser, provided the New Successful Purchaser posts an additional, non-refundable deposit equal to ten (10%) percent of the Purchase Price prior to the forty-fifth (45th) day following receipt of notification of Successful Purchaser's Default (the "New Successful Purchaser's Additional Deposit").  The New Successful Purchaser's Additional Deposit shall be made by certified check or bank check made payable to "ORTIZ & ORTIZ L.L.P., as Attorneys" or by wire in immediately available federal funds and, together with the original Deposit, shall be deemed the "Deposit".  If the New Successful Purchaser elects to exercise the New Successful Purchaser's Extension, the Closing shall take place on or before the ninetieth (90th) day following receipt of notification of Successful Purchaser's Default, **TIME BEING OF THE ESSENCE as to the New Successful Purchaser,** although such date may be extended solely by the Debtor.  If the New Successful Purchaser elects to exercise the New Successful Purchaser's Extension, the New Successful Purchaser shall be responsible for all real estate taxes incurred from the 45th day following receipt of notification of Successful Purchaser's Default through closing.

8.      The closing shall take place at the offices of Ortiz and Ortiz, L.L.P., ("Ortiz"), with offices at 32-72 Steinway Street, Suite 402, Astoria, NY 11103 (the "Closing").

9.    **The Successful Purchaser, or the New Successful Purchaser, as the case may be, shall pay any and all costs and expenses in connection with the Closing related to obtaining a survey; fee title or mortgage insurance; title company endorsement, search and escrow charges; environmental, engineering or other Property inspections; appraisals, reports and other costs of Property due diligence; and County, State, New York City, or other real property transfer, deed or documentary tax, or other taxes imposed upon the sale due in connection with the transfer of the Property from the Debtor at Closing.** The Successful Purchaser acknowledges that it will be responsible for the completion of any ACRIS forms, if required. The Debtor shall not be required to execute any form of title affidavit (but may in its sole and absolute discretion) and all title exceptions customarily omitted from a title policy on account of such title affidavit shall be deemed permitted exceptions. The Successful Purchaser, or the New Successful Purchaser, as the case may be, acknowledges that it will be responsible for the preparation of all Closing documents required including, but not limited to, transfer tax forms. In connection with the Closing and Closing date, the Successful Purchaser or the New Successful Purchaser, as the case may be, is hereby given notice that **TIME IS OF THE ESSENCE against the Successful Purchaser or the New Successful Purchaser, as the case may be, and the failure of the Successful Purchaser or the New Successful Purchaser, as the case may be, to close for any reason whatsoever (except as otherwise provided herein) including its failure to pay the balance of the Purchase Price on the Closing date, will result in an immediate forfeiture of the Deposit and the termination of the Successful Purchaser's or the New Successful Purchaser's, as the case may be, right to acquire the Property under these Terms and Conditions of Sale and the Memorandum of Sale.** The Successful Purchaser or the New Successful Purchaser, as the case may be, shall be obligated to close title to the Property and, except as expressly set forth herein, there is no contingency of any kind or nature that will permit the Successful Purchaser, or the New Successful Purchaser, as the case may be, to cancel or avoid its obligation under these Terms and Conditions of Sale and the Memorandum of Sale other than the Debtor's inability to deliver insurable title to the Property. Further, the Successful Purchaser or the New Successful Purchaser, as the case may be, shall have demonstrated, to the satisfaction of the Debtor, evidence of its ability to conclude the transaction upon these Terms and Conditions of Sale and the Memorandum of Sale, without delay. The Debtor reserves the right to reject any Purchaser or Bidder who the Debtor believes, in its sole discretion, is not financially capable of consummating the purchase of the Property. Expenses incurred by the Successful Purchaser, or any other Bidder, concerning any due diligence shall be the sole responsibility of such Bidder and, under no circumstances shall Ortiz or the Debtor be responsible for, or pay, such expenses.

10.    The only commission that will be paid are pursuant to agreements by the Successful Purchaser and its Licensed Real Estate Broker. The commission will be paid by the Successful Purchaser and, under no circumstances shall the Debtor be responsible for, or pay, any commissions to brokers without prior approval of the Bankruptcy court.

11.    The Debtor and its professionals have not made and do not make any representations or warranties as to the physical condition, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Property or this Auction, which might be pertinent to the purchase of the Property, including, without limitation, (i) the current or future real estate tax liability, assessment or valuation of the Property; (ii) the potential qualification of the Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the

compliance or non-compliance of the Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Property; (iv) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (v) the current or future use of the Property; (vi) the current or future rents, other operating incomes or expenses; (vii) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (viii) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos, any lead paint or other hazardous materials anywhere on the Property, or notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued by any governmental department, agency or bureau having authority as to but not limited to lands, housing, buildings, fire, health, environment and labor conditions affecting the property. **Each Bidder hereby expressly agrees and acknowledges that no such representations or warranties have been made.** The Debtor shall not be liable or bound in any manner by expressed or implied warranties, guarantees, promises, statements, representations or information pertaining to the Property, made or furnished the Debtor or any real estate broker, agent, employee, servant or other person or professional representing or purporting to represent the Debtor unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing within these Terms and Conditions of Sale and the Memorandum of Sale. **The Property shall not be delivered vacant of tenancies at Closing.**

12.    The Property is being sold **"AS IS" "WHERE IS", "WITH ALL FAULTS"**, without any representations, covenants, guarantees or warranties of any kind or nature, and free and clear of any liens, claims, or encumbrances of whatever kind or nature, with such liens, if any, to attach to the proceeds of sale in such order and priority as they existed immediately prior to the Closing, and sale of the Property is subject to, among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (e) environmental conditions; provided, however, **the Property shall be delivered free and clear of any and all monetary liens.** By delivering their respective Qualifying Deposits, all Bidders acknowledge that they have had the opportunity to review and inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on their own independent investigations and inspections of the Property in making their bids. Neither the Debtor nor any of its collective representatives makes any representations or warrantees with respect to the permissible uses of the Property including, but not limited to, the zoning of the Property. All Bidders acknowledge that they have conducted their own due diligence in connection with the Property and are not relying on any information provided by Ortiz, the Debtor, or its professionals. The Property will be sold subject to any and all violations requiring corrective action.

13.    The Successful Purchaser has five (5) days from the Court Approval Date to order title, copy of which shall promptly be provided to Ortiz. The Successful Purchaser has twenty (20) days from the Court Approval Date to advise Ortiz (by electronic mail to email@ortizandortiz.com) of any and all title issues or defects that would in any way be an impediment to the Closing on the sale of the Property. Failure of the Successful Purchaser to advise Ortiz within twenty (20) days from the Court Approval Date of any such title issues or defects shall be deemed a waiver of any and all rights to raise any such title issues or defects, with

Ortiz reserving the right to specify a particular title company to insure title, provided said company is licensed in the State of New York.

14.    The Debtor shall convey the Property by delivery of a quitclaim deed. The quality of title shall be that which any reputable title insurance company authorized to do business in the State of New York is willing to approve and insure. If the Successful Purchaser or the New Successful Purchaser, as the case may be, is unable to obtain title insurance, subject to the permissible exceptions contained herein, Debtor may, at his option, arrange for the issuance of a title insurance policy by such a company at the sole cost and expense of the Successful Purchaser, or the New Successful Purchaser, as the case may be.

15.    Nothing contained in these Terms and Conditions of Sale is intended to supersede or alter any provisions of the "Bankruptcy Code" or otherwise interfere with the jurisdiction of the Bankruptcy Court. All of the terms and conditions set forth in these Terms and Conditions of Sale are subject to modification as may be directed by the Court. The Debtor reserves the right to modify these Terms and Conditions of Sale at the Auction or thereafter to maintain consistency with the provisions of the Bankruptcy Code and/or prior orders of the Court.

16.    These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the Auction of the Property. By making a bid for the Property, all Purchasers will be deemed to have acknowledged having read and understood these Terms and Conditions of Sale and have agreed to be bound by them.

17.    If the Debtor is unable to deliver the Property in accordance with these Terms and Conditions of Sale for any reason whatsoever, the Debtor's only obligation will be to refund the Deposit, without interest, to the Successful Purchaser and/or the New Successful Purchaser, as the case may be, and upon such refund, the Successful Purchaser or the New Successful Purchaser, as the case may be, and/or New Successful Purchaser will have no claim or recourse against the Debtor and its professionals and shall have no further rights under these Terms and Conditions of Sale or Memorandum of Sale.

18.    The Auction of the Property is subject to further order of the Bankruptcy Court confirming the Auction.

19.    Ortiz shall notify the Successful Purchaser whether the Auction is confirmed.

20.    The Bankruptcy Court shall determine any disputes concerning the Auction of the Property. By participating in the Auction, all Purchasers consent to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtor's pending case.

I have read these Terms and Conditions of Sale and agree to be bound by them.

By:_____    Date: 4-13-16

# Exhibit F

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

In re

LRB NURSES REGISTRY, INC.,                     Case No. 15-45532


                              Debtor.          Chapter 11

---------------------------------------------------------X

## BIDDING PROCEDURES

These bidding procedures (the "Bidding Procedures") have been approved by an order o the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") entered on March 25, 2016 [Docket No. 26] (the "Bidding Procedures Order") in the above-captioned bankruptcy case.

These Bidding Procedures set forth the process by which L.R.B. Nurses Registry, Inc., (the "Debtor") is authorized to conduct a sale ("Sale") by auction (the "Auction") of the real property located at 4212 Church Avenue, Brooklyn, New York 11203 (the "Property").

Any interested bidder should contact, as soon as practical, the Debtor's proposed counsel Ortiz & Ortiz, LLP, 32-72 Steinway Street, Suite 402, Astoria, New York 11103 ("O & O"). Any party desiring to obtain a copy of the Bidding Procedures Order may do so by contacting O & O.

## I.    The Bidding Process

The Debtor will (a) coordinate the efforts of Potential Bidders (as defined below) in conducting their respective due diligence investigations regarding the Property; (b) receive and evaluate bids from Potential Bidders; (c) determine whether any Potential Bidders are Qualified Bidders (as defined below); (d) receive and evaluate bids from Qualified Bidders prior to the Auction; and (e) administer the Auction. The foregoing activities are referred to, collectively, as the "Bidding Process." Neither the Debtor nor his representatives will be obligated to furnish information of any kind whatsoever to any person or entity that is not a Potential Bidder.

The Debtor and its representatives will use good faith efforts to provide all Potential Bidders with substantially similar access and information.  Any person or entity who wishes to participate in the Bidding Process must meet the participation requirements for Potential Bidders below and must thereafter submit a Qualified Bid to become a Qualified Bidder.

## II.    Participation Requirements

### A.    Interested Parties

Unless otherwise provided herein or ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process, each interested person or entity (each, an "Interested Party") must deliver the below-listed items (unless previously delivered) to O & O on or before **April 14, 2016** (or such later date to which the Debtor consents, but, in all events prior to the commencement of the Auction). The Interested Party must deliver each of the following:

    (1)    a statement and other factual support demonstrating to the Debtor's reasonable satisfaction that the Interested Party has a bona fide interest in purchasing the Property; and

    (2)    current financial statements or other information deemed reasonably acceptable to the Debtor demonstrating the financial wherewithal to consummate the purchase of the Property.

After receipt of the items identified above, the Debtor shall review the materials as soon as reasonably practicable and determine whether an Interested Party has a bona fide interest in purchasing the Property and whether such Interested Party has the financial wherewithal to do so. To the extent any such Interested Party satisfies both of the aforesaid criteria, such Interested Party shall be deemed a "Potential Bidder."

### B.    Due Diligence

Until the Bid Deadline (as defined below) and in addition to access to the Property, the Debtor will provide any Potential Bidder such due diligence access or additional information as the Debtor determines to be reasonable and appropriate under the circumstances but only to the extent same is in the Debtor's possession.

In the event that, having performed its due diligence, the Potential Bidder fails to timely submit a Qualified Bid or if such Potential Bidder submits one or more Qualified Bids and none of which Qualified Bids are accepted by Debtor, then, in such an event, the deposit made by such Potential Bidder to qualify as a Potential Bidder shall be returned to Potential Bidder and such Potential Bidder shall cease to be a Potential Bidder and is prohibited from further making any bids or attending the Auction.

## III.    Qualified Bid

Each bid, offer, solicitation, or proposal a Potential Bidder submits must satisfy each of the following conditions to constitute a "Qualified Bid" and for the Potential Bidder to constitute a "Qualified Bidder."

    A.    <u>Bid Deadline</u>

A Potential Bidder who desires to be a Qualified Bidder must deliver written and electronic copies of the Required Bid Documents (as defined below) to the following parties no later than 11:30 a.m. (Eastern Time) on **<u>April 14, 2016</u>**, or such later date to which the Debtor consents, but, in all events prior to the commencement of the Auction, (the "Bid Deadline") to Ortiz & Ortiz, LLP, 32-72 Steinway Street, Suite 402, Astoria, New York 11103.

The Debtor may extend the Bid Deadline once or successively, but is not obligated to do so.  If the Debtor extends the Bid Deadline, it will promptly notify all Potential Bidders of such extension.

At any time after the Bid Deadline and prior to the conclusion of the Auction, the Debtor further reserves the right, in its reasonable business judgment to invite parties that have not previously submitted Qualified Bids to do so, such that they may be considered for participation in the Auction pursuant to the Bidding Procedures.

    B.    <u>Bid Requirements</u>

All bids must include the following items (the "Required Bid Documents"):

(a)    a letter stating that the bidder's offer is irrevocable until (a) the conclusion of the Auction to the extent the bidder is not the Successful Bidder or Backup Bidder, or (b) the closing of the Sale Transaction (the "Closing") to the extent the bidder is the Successful Bidder or Backup Bidder;

(b)    a cash deposit (via wire transfer or certified funds) to ORTIZ AND ORTIZ LLP, as Attorneys (the "Deposit Agent") the total sum equal to ten percent (10%) of such bidder's bid (a "Good Faith Deposit"); and

(c)    proof of financial ability to consummate the purchase of the Property.

If a bid is received and, in the Debtor's judgment it is not clear to the Debtor whether the bid is a Qualified Bid, the Debtor may consult with the Potential Bidder and seek additional information in an effort to establish whether or not a bid is a Qualified Bid.

## IV.    **Evaluation of Qualified Bids**

Unless the Debtor agrees otherwise, a bid received from a Potential Bidder will constitute a Qualified Bid only if it includes all of the Required Bid Documents and meets all of the above requirements (except as otherwise provided for credit bids of a lender as provided for in Section XIII).  All Qualified Bids will be considered, but the Debtor reserves the right to reject any and all bids other than the highest or otherwise best bid in the Debtor's business judgment.  The Debtor may, in its business judgment, evaluate bids on numerous grounds including, without

limitation, (i) any delay, (ii) additional risks (including closing risks), (iii) whether the Qualified Bidder provides for an amount sufficient to pay the senior obligations applicable to the Property in cash in full (other than for credit bids of a lender as provided for in Section XIII), and (iv) added costs to the Debtor.

The Debtor shall make a determination regarding whether a bid is a Qualified Bid and shall notify bidders whether their bids have been determined to be qualified by no later than 12:00 p.m. (Eastern time) on **April 14, 2016.**  The Debtor reserves the right, at any time after the Bid Deadline and prior to the commencement of the Auction, to request parties submitting written offers (whether or not such offers might be determined to be Qualified Bids) to amend their written offers.

**V.**    **Auction**

In the event that the Debtor timely receives more than one Qualified Bid, the Debtor shall conduct the Auction of the Property. The Debtor shall conduct the Auction in accordance with these Bidding Procedures and upon notice to all Qualified Bidders who have submitted Qualified Bids. The Auction for the Property will be conducted by O & O on **April 14, 2016**, at the offices located at 32-72 Steinway Street, Suite 402, Astoria, New York 11103. Only representatives or agents of the Debtor and any Qualified Bidders that have submitted a Qualified Bid (and the legal and financial advisors to each of the foregoing) will be entitled to attend the Auction.

Only Qualified Bidders will be entitled to make any subsequent bids at the Auction. All bids must be made openly and in the presence of all parties at the Auction.

At ~~least two business days prior to the~~ the start of the Auction, the Debtor will provide copies of the Qualified Bid that the Debtor believes, in its reasonable discretion represents the highest or otherwise best offer (the "Starting Bid") to all Qualified Bidders that have informed the Debtor of their intent to participate in the Auction.  If requested, the Debtor will provide to these same parties an explanation of how the Starting Bid is valued and a list of all Qualified Bidders.

If a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid will nevertheless remain fully enforceable against such Qualified Bidder.  The Debtor may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids (as defined below)) for conducting the Auction, provided that such rules are (a) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code, or any Order of the Bankruptcy Court entered in connection herewith; and (b) disclosed to each Qualified Bidder participating in the Auction.

Bidding for Property at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round a Qualified Bidder(s) submits at least one subsequent bid that is no less than $50,000.00 above the immediately preceding highest or

best bid.

After the first round of bidding and between each subsequent round of bidding, the Debtor shall announce the bid(s) that it believes to be the highest or otherwise best offer (the "Leading Bid").

A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and confirmation of the Leading Bid.

## VI.    Selection Of Successful Bid

Prior to the conclusion of the Auction, the Debtor will (a) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale transaction and the cost to the Debtor's estate; (b) identify the highest or otherwise best offer (the "Successful Bid"); (c) determine which Qualified Bid is the next highest or otherwise best offer or collection of offers (the "Backup Bid") for the Property; and (d) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of (i) the identity of the bidder whose bid was determined to the be the Successful Bid (the "Successful Bidder"), (ii) the amount and other material terms of the Successful Bid, and (iii) the identity of the party or parties that submitted the Backup Bid (the "Backup Bidder").

The Successful Bidder shall within 2 business days of the auction, deposit with O&O certified funds equal to the amount necessary to increase its Good Faith Deposit to ten percent (10%) of the Successful Bid.

In advance of the Sale Hearing, the Debtor shall complete and execute all agreements, instruments, or other documents necessary to bind the Successful Bidder to close on the sale of the Property.  The Debtor shall also complete all agreements necessary with the Backup Bidder in the event the Successful Bidder does not consummate the purchase of the Property.

The Debtor will sell the Property for the highest bid to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court after the Sale Hearing. The presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of the Qualified Bid. The Debtor will be deemed to have accepted a Qualified Bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing. Only the Successful Bidder, or the Backup Bidder if applicable, will be entitled to purchase the Property pursuant to these Bidding Procedures.

If for any reason, the Successful Bidder fails to consummate the purchase of the Property, the Debtor and the Backup Bidder are authorized to effect the sale of the Property to such Backup Bidder as soon as is commercially reasonable. If such failure to consummate the purchase is the result of a breach by the Successful Bidder, the Debtor reserves the right to seek

all available remedies from the defaulting Successful Bidder, subject to the terms of the applicable purchase agreement.

## VII.   The Sale Hearing

The Sale Hearing will be held before the Honorable Carla E. Craig on April 20, 2016, at 2:30 p.m. (Eastern Time) in the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, New York 11201. The Sale Hearing may be adjourned without further notice by an announcement of the adjourned date at the Sale Hearing. If the Debtor does not receive any Qualified Bids, the Debtor will report the same to the Bankruptcy Court at the Sale Hearing.  In all other events, the Debtor will seek at the Sale Hearing approval of the offer constituting the Successful Bid, or to the extent applicable, approval of the offer constituting the Alternate Bid.

## VIII.   Return of Good Faith Deposit

The Debtor's presentation to the Bankruptcy Court of the offer constituting the Successful Bid and Backup Bid will not constitute the Debtor's acceptance of either bid, which acceptance will only occur upon approval of such bid by the Bankruptcy Court at the Sale Hearing.  Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the sale, then the Backup Bid will be deemed to be the Successful Bid and the Debtor will be authorized, but not directed, to effectuate a sale to the Backup Bidder subject to the terms of the Backup Bid of such Backup Bidder without further order of the Bankruptcy Court.

The Deposit Agent will hold the Good Faith Deposits of all Qualified Bidders in escrow, and, while held in escrow, the Good Faith Deposits will not become property of the Debtor's bankruptcy estates unless released from escrow pursuant to terms of the applicable escrow agreement or pursuant to further order of the Bankruptcy Court. The Deposit Agent will retain the Good Faith Deposits of the Successful Bidder and the Backup Bidder until the Closing unless otherwise ordered by the Bankruptcy Court. The Good Faith Deposits of the other Qualified Bidders will be returned within five (5) business days of the entry of the Sale Order.

At the Closing, the Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit.  The Deposit Agent will release the Good Faith Deposit of the Backup Bidder within five (5) business days after the Closing with the Successful Bidder.

## IX.   As Is, Where Is

The sale of the Property will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, his agents, or his estate except as provided in any agreement with respect to the sale approved by the Bankruptcy Court.

**X.**    **Free and Clear of Any and All Interests**

Except as otherwise provided in the Sale Order or the Successful Bidder's purchase agreement, all of Debtor's right, title, and interest in, and to, the Property subject thereto will be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon (collectively, the "Interests") to the maximum extent permitted under Section 363 of the Bankruptcy Code. Such Interests will attach to the net proceeds of the sale of the Property with the same validity and priority as such Interests applied against the applicable Property.

**XI.**    **Credit Bid Right**

Subject to applicable law and pursuant to Section 363(k) of the Bankruptcy Code, any senior creditor, whose liens are not in dispute will have the right to use its portion of the senior obligations to credit bid as the equivalent of cash on a dollar-for-dollar basis up to the amount of its secured claim with respect to the Property, without compliance with the any of the Qualified Bid requirements; provided however, that if a lien(s) is the subject of a dispute, the applicable senior lender shall be entitled to seek relief from the Bankruptcy Court allowing such credit bid to nonetheless proceed, with the rights and objections of all parties reserved in connection therewith.

**XII.**    **Reservation of Rights; Deadline Extension**

Notwithstanding any of the foregoing, the Debtor reserves his rights, in the exercise of its fiduciary obligations, to modify the Bidding Procedures or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Property, including, without limitation, extending the deadlines set forth in the Bidding Procedures, modifying bidding increments, adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice.

However, any material modifications to the terms of the bidding procedures and any decision by the Debtor (a) to cancel the Auction, (b) withdraw the Property from the Auction, (c) adjourn or change the location of the Auction, or (d) declare any party to be a stalking-horse bidder, are subject to three (3) days' notice to the United States Trustee and parties who filed notices of appearance, with an opportunity to object unless the Court orders otherwise. All non-material modifications of the bidding procedures must be filed with the Court, with an email copy to counsel to the United States Trustee and all parties who filed notices of appearance.

[Remainder of Page Left Intentionally Blank]

## XIII.   The Closing Date

In the event the property has been sold to a third party, the closing date shall be fourteen (14) days calendar after the date the sale is confirmed by the Bankruptcy court, time being of the essence.


Dated:  March 25, 2016                           ORTIZ AND ORTIZ LLP
         Astoria, New York                        Norma E. Ortiz, Esq.
                                                  Martha de Jesus, Esq.
                                                  32-72 Steinway Street, Suite 402
                                                  Astoria, NY 11103
                                                  T: (718) 522-1117
                                                  F: (718) 596-1302
                                                  Proposed Attorneys for Debtor in Possession